Wendell Speer KUHN, Jr.; Francis E. Becker, Jr.; Bruce C. Derenthal; Julian Russell Dracon; Jacqueline Farrar; Robert J. Flor; Edward N. Gootee, Jr.; David S. Harrigan; Jerry D. Jacks; Joe B. Mohorn; Richard C. Poyns; Donald L. Tatterson; Drew Charles Weyland; Richard W. Zolman; and all others similarly situated, Plaintiffs–Appellants,

and

Coghill & Goodspeed, P.C., and Sparks Dix, P.C., on behalf of themselves individually and as class counsel, Attorneys–Appellants,

v.

STATE of Colorado; The Department of Revenue of the State of Colorado; and John J. Tipton, in his capacity as Executive Director of The Department of Revenue of the State of Colorado, Defendants–Appellees.

Nos. 95SA291, 96SA205.

Supreme Court of Colorado,
En Banc.

Sept. 23, 1996.

1054

Coghill & Goodspeed, P.C., G. Stephen Long, David J. Richman, Martin D. Beier, Denver, Sparks Dix, P.C., Timothy V. Dix, R. Kenneth Sparks, Colorado Springs, for Plaintiffs–Appellants/Attorneys–Appellants.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Paul Farley, Deputy Attorney General, Larry A. Williams, First Assistant Attorney General, Thomas D. Fears, Assistant Attorney General, State Services Section, Denver, for Defendants–Appellees.

Justice KOURLIS delivered the Opinion of the Court.

We accepted transfer of this case under C.A.R. 50 prior to judgment of the court of appeals in order to review the District Court's application of section 13–17–203, 6A C.R.S. (1996 Supp.), to class counsel's request for an attorney fees award in *Kuhn v. Colorado*, No. 89CV9164, pending in Denver District Court. Because we find that class counsel's right to the fee had vested prior to the passage of section 13–17–203, we reverse the trial court's ruling and remand this case for further proceedings consistent with this opinion.

Plaintiffs–Appellants Wendel Speer Kuhn, Jr. et al., individually and as representatives of a class of federal military retirees (appellants), and Attorneys–Appellants Coghill & Goodspeed P.C. and Sparks Dix P.C., individually and as class counsel (class counsel), appeal from the Denver District Court's decision to apply a statutory cap to attorney fees

awarded to class counsel in this case. The District Court order was entered on July 7, 1995. Notice of Appeal was filed, and by joint motion, the appellants and the State of Colorado, the Department of Revenue, and John J. Tipton as executive director of the Department of Revenue (appellees) requested certification of the issues to this court, which request was granted on August 31, 1995.[1]

### I.

The underlying lawsuit which forms the basis for class counsel's request for fees was filed in June of 1989. The appellants sought to overturn as unconstitutional the state income taxation scheme contained in section 39–22–104(4)(g), 16B C.R.S. (1994), which they claimed discriminated against military retirees. Appellants claimed that all military retirees who were unconstitutionally taxed in tax years 1984 through 1988 were entitled to a refund of the amount of tax illegally collected.

Class counsel entered into a contingent fee agreement with the class representatives pursuant to which they agreed to undertake the litigation for a reasonable fee to be determined by the court if the litigation ultimately proved successful.[2]

On September 16, 1989, the trial court denied appellants' motion for class certification. On June 8, 1990, the trial court granted appellants' motion for summary judgment declaring the statute unconstitutional and providing that all military retirees who had timely filed returns were entitled to refunds. Appellees appealed the trial court order and appellants cross-appealed the denial of class certification. On September 16, 1991, in

*Kuhn v. State Department of Revenue*, 817 P.2d 101 (Colo.1991), this court held that the tax provision was unconstitutional and that the affected taxpayers were entitled to a refund of any tax illegally collected. We further determined that the trial court had erred in denying class certification and we remanded for a determination of whether the proposed class action would satisfy the requirements of C.R.C.P. 23(b).

Following remand, the appellees began making the refunds to military retirees who had timely filed refund claims. Appellants then sought to include in the class those retirees who had not timely filed refund claims, and those who had not filed at all. On October 6, 1993, the trial court granted the class certification, and identified the class as all military retirees who had paid state income tax on military retirement pay in excess of $2,000 in one or more of tax years 1984 through 1988.[3] Class counsel then began the task of compiling the list of class members and calculating the refunds due to those individuals. In November of 1994, the trial court appointed Arthur Andersen & Co. as Class Administrator for the subgroup known as non-filers, and in January, 1995, extended that appointment for the benefit of the untimely filers as well.

In March of 1995, class counsel filed the list of untimely filers with the court, together with the calculation of refunds and interest due to them. The petition requested a tax refund plus interest through May 3, 1995, in the amount of $2,245,000, with interest thereafter accumulating at 9% per annum. Class counsel simultaneously filed a motion for a preliminary award of attorney fees in the amount of 25% of the refunds to be issued.

1. Consolidation of this appeal with plaintiff class and counsel's appeal from the District Court order dated May 9, 1996, was granted on June 4, 1996.

2. The amended contingent fee agreement read in relevant part:
 The firms agree to handle this lawsuit as a class action on a contingent basis. The contingency upon which compensation is to be based is as follows: No charge will be made to the plaintiffs for legal hours and time expended. The firm will make an application to the Court for the award of counsel or attorneys' fees in

connection with the prosecution of this case. Within reasonable limitations and fiduciary responsibilities, the plaintiffs agree to support the fee application of the two law firms. Such an application will be filed in the event the litigation is successful, and on the other hand, if there is no success in the litigation or no settlement, then the plaintiffs will not be responsible for any fees to either law firm....

3. The trial court ultimately clarified its order in various respects, none of which are relevant to the issues now before us.

A hearing was held in April and May on the two motions. Appellees opposed the fee sought on the grounds that it was statutorily prohibited by section 13–17–203. The trial court approved the class distribution. However, by order dated July 7, 1995, the trial court held that section 13–17–203 capped the allowable attorney fees at $250,000, and that the statute was constitutional. The trial court further concluded that class counsel's right to attorney fees had not vested prior to entry of a judgment awarding compensation. The trial court ordered payment of $250,000 in fees to class counsel pursuant to the statutory cap.[4]

The statute at issue, section 13–17–203, reads as follows:

*Limitation on attorney fees in class action litigation against public entities.* If the plaintiffs prevail in any class action litigation brought against any public entity, as defined in section 24–10–103(5), C.R.S., the amount of attorney fees which the plaintiffs' attorney is entitled to receive out of any award to the plaintiffs shall be determined by the court; except that such amount shall not exceed two hundred fifty thousand dollars. Such limitation shall apply where the public entity pays the attorney fees directly to the plaintiffs' attorneys or where the public entity is required to pay the attorney fees indirectly through any program it administers by reducing the benefits or amounts due to the individual plaintiffs.

§ 13–17–203, 6A C.R.S. (1996 Supp.). This section was enacted in April of 1992 and became effective immediately.

## II.

We are called upon to determine whether the trial court appropriately applied section 13–17–203 to class counsel in this case so as to cap the attorney fees award at $250,000.

Appellants make various arguments in opposition to application of the statute. First, they argue that the statute is an unconstitutional bill of attainder enacted specifically to punish class counsel in this case. They further argue that the cap interferes with vested rights under the contingent fee contract; that it operates as an unconstitutional taking of private property without a public purpose or just compensation; and that it impairs the contract between class counsel and their clients. They argue that the statute deprives class action litigants of equal protection of the law and equal access to the courts. Lastly, they posit that the trial court should not have applied the statute because the State was not paying the fees "directly" and the State did not "administer" the refunds ordered to be made to class members.

We find that this court's September 1991 ruling that the plaintiffs were entitled to a tax refund created a monetary damage award from which the attorneys' unliquidated right to compensation immediately arose. Thus, the right to attorney fees vested before the enactment of section 13–27–203, making the statute inapplicable to the present case.

## III.

A statute that is retrospective in its operation violates Article II, Section 11 of the Colorado Constitution.[5] It is important, however, to distinguish between a retrospective application of a statute and a retroactive application of a statute. Legislation is applied retroactively when it operates on transactions or rights and obligations that occurred or existed before its effective date. *Ficarra v. Department of Regulatory Agencies*, 849 P.2d 6, 11 (Colo.1993). Retroactive

---

4. In February, 1996, the plaintiff class moved for payment of refunds to the non-filers group. In conjunction with this motion, class counsel again petitioned for an award of attorney fees equal to 25% of the refunds to be issued to the non-filers. By order dated May 9, 1996, the trial court held that section 13–17–203 capped attorney fees in the case at $250,000 and thus denied payment of additional attorney fees to class counsel. On June 4, 1996, the appeals regarding attorney fees in the untimely filers group and the non-filers group were consolidated for hearing in this Court.

5. Art. II, § 11, of the Colorado Constitution provides:

No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly.

application of a statute is not necessarily unconstitutional. *Id.* Retroactive application is permitted where the statute effects a change that is merely procedural or remedial in nature. *Continental Title Co. v. District Court,* 645 P.2d 1310, 1315 (Colo.1982). This is because a change in remedy does not constitute the impairment of a vested right, "for there is no such thing as a vested right in remedies." *Id.* (citations omitted). We distinguish legislation that is merely retroactive from legislation that is also retrospective by applying the term retrospective only to legislation whose retroactive effect *"impairs vested rights* acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Ficarra,* 849 P.2d at 15 (citations omitted) (emphasis added).

The district court found that although section 13–17–203 was enacted after the proceedings in this case had begun, it nevertheless could be applied to the case, precluding an award of more than $250,000 as compensation to the attorneys. The district court based this finding on its conclusion that a right to attorney fees is a remedial right, not a substantive right, and hence could not vest before a judgment actually awarding the fees issued. Thus, it found that section 13–17–203 could govern the award of attorney fees in this case without violating the constitutional prohibition against retrospective application of a statute. As a threshold matter, our analysis differs from that of the district court because we do not agree with the categorization of the right to attorney fees in this case as remedial.

■ The district court relied on *Billington v. Yust,* 789 P.2d 196 (Colo.App.1989) *cert. denied.* No. 89SC524 (Colo. Mar. 5, 1990), and *City of Wichita v. Chapman,* 214 Kan. 575, 521 P.2d 589 (1974). Both of these cases determined a party's right to an award of attorney fees to be a remedial right. "Consequently, statutes either increasing or decreasing allowable costs, including attorney fees, are consistently applied to litigation pending when such statutes become effective...." *City of Wichita,* 521 P.2d at 597 (citations omitted). However, *City of Wich-*

ita and *Billington* concerned the *shifting* of attorney fees in circumstances in which the court orders one of the litigants to pay the other litigant's attorney fees. We agree that the right of one party to have the opponent pay his or her attorney fees is merely a remedial right. That is quite different, however, from the case facing us today. In the present case, the court did not order the defendants to pay plaintiffs' attorney fees, but rather compensated the attorneys out of the damage award. This arrangement for payment of attorney fees is upheld by the long established and widely accepted common fund doctrine.

■ Under the American rule, unless a statute or private contract provides otherwise, parties are responsible for their own costs of litigation, including attorney fees. *Runyon v. McCrary,* 427 U.S. 160, 185, 96 S.Ct. 2586, 2601–02, 49 L.Ed.2d 415 (1976); *Bunnett v. Smallwood,* 793 P.2d 157, 160 (Colo.1990). Under Colorado law, there are certain statutory exceptions to this rule. *See id.* 793 P.2d at 162. In addition, there are several common law exceptions. The common fund doctrine is one exception recognized under both federal and Colorado law. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *Pensioners Protective Ass'n v. Davis,* 112 Colo. 535, 150 P.2d 974 (1944); *Agee v. Trustees of Pension Bd.,* 33 Colo.App. 268, 518 P.2d 301 (1974).

■ The common fund doctrine applies where a suit involving an individual or representative plaintiff results in the creation of a monetary fund for a class of people situated similarly to the plaintiff. The common fund doctrine is considered an exception to the American rule because the individual or representative plaintiff is not required to compensate his or her attorney out of pocket. Instead, the fees are paid out of the monetary fund that the litigation has produced. "Fees in common fund cases are extracted from the predetermined damage recovery rather than obtained from the losing party.... Thus, unlike statutory fees, which result in a *shifting* of the fee burden to the losing party, common fund fees result in a *sharing* of the fees among those benefited by

the litigation." *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988).

Hence, the statutory fee shifting arguments that the district court relied on are inapposite to the present case. *Cf. Pavlidis v. New England Patriots Football Club, Inc.,* 675 F.Supp. 707, 710 (D.Mass.1987) (holding that the substantial differences underlying fee-shifting and common fund cases make arguments regarding reasonable awards of attorney fees under fee-shifting cases inapplicable to common fund cases). To determine whether or not section 13–17–203 may be constitutionally applied to the facts of this case, we must determine: 1) whether the attorneys' right to compensation from the common fund is a remedial or substantive right, and if the latter, 2) whether this right vested before the enactment of section 13–17–203. We answer both questions in the affirmative and thus reverse the district court's order.

### IV.

■ The common fund doctrine applies when a plaintiff, either as an individual or a class representative, creates, increases, or preserves a monetary fund for the benefit of an ascertainable class of persons similarly situated. The doctrine is based on "the equitable notion that those who have benefitted from the litigation should share its costs." Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 250 (1985). The origins of this doctrine are in fiduciary law, where a trustee acting to create or preserve assets of the trust is entitled to reimbursement from the trust fund of expenses incurred in carrying out this duty. "It is a general principle that a trust estate must bear the expenses of its administration." *Trustees v. Greenough,* 105 U.S. 527, 532, 26 L.Ed. 1157 (1881).

It is also established by sufficient authority, that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts.

*Id.* 105 U.S. at 532–33. Thus, the Supreme Court applied this doctrine of equitable reimbursement to a plaintiff who, although he was not a trustee, "acted the part of a trustee in relation to the common interest." *Id.* at 532.

Since *Trustees v. Greenough* and *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), the United States Supreme Court has consistently recognized a substantive right held by the attorney who participates in litigation that creates a common fund to be reasonably compensated out of that fund. "[A] litigant or a *lawyer* who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S at 478, 100 S.Ct. at 749 (emphasis added). *See also* 3 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 14.02 (3d ed. 1992); J. Clay Smith, Jr., *Standards for Judicial Approval of Attorneys' Fees in Class Action and Complex Litigation,* 20 How. L.J. 20, 22 (1977).

■ The attorney's claim to an award of fees is grounded in the principle that "his conduct of the suit conferred a benefit on all the class members, that one or more class members has agreed by contract to pay for the benefit the attorney conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefitting them. . . ." *Lindy Brothers Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 165–66 (3d Cir.1973). Thus, we find the right to compensation out of the common fund to be a substantive right belonging to the litigant or the attorney.

### V.

■ Because the attorney's right to a fee award from the common fund is a substantive right, section 13–17–203 may not be applied in a manner that would retrospectively impair a vested right to such an award. Thus, it remains for us to determine whether

the attorneys' right to fees from the fund vested before the enactment of section 13–17–203.

A vested right is more than a mere expectation, it is legal or equitable title to the present or future enjoyment of property. *Ficarra v. Department of Regulatory Agencies,* 849 P.2d 6, 16 (Colo.1993). However, "[t]here are no bright line tests to determine what constitutes a vested right or when that right accrues." *Id.* at 17, (citing *People v. D.K.B.,* 843 P.2d 1326, 1334 (Colo.1993) (Kirshbaum & Quinn, JJ., concurring)). In determining whether a statute impairs vested rights, among other factors we must consider whether the provision defeats the reasonable expectations of affected persons or surprises persons who have long relied on a contrary state of law. *Ficarra,* 849 P.2d at 16.

In order to answer those questions in the present context, we must further explore the rationale underlying the common fund doctrine. An attorney's right to fees from the common fund derives from equitable principles of fairness that combine aspects of both unjust enrichment and *quantum meruit.* 1 Alba Conte, *Attorney Fee Awards* § 2.01, at 28 (2d ed. 1993). Since attorneys are not providing their services to absent class members as a gift, but instead expect to be fairly compensated for the benefits they confer on the class, restitution requires those who accept the fruits of these labors to compensate the attorneys for the reasonable value of their services. Charles Silver, *A Restitutionary Theory of Attorneys' Fees in Class Actions,* 76 Cornell L.Rev. 656 (1991); *see also Restatement of Restitution* § 117 (1937).

Hence, it is the creation of the fund that triggers the equitable obligation to compensate the attorneys. *See* 1 Alba Conte, *Attorney Fee Awards* § 2.18 (2d ed. 1993). Necessarily then, the attorney's equitable right to compensation vests at the time the fund is created.

Normally, court awarded fees are disbursed at the final disposition of the litigation; however, the common fund doctrine allows for interim fee awards. A typical circumstance in which interim fees are awarded is after issuance of judgment regarding liability, from which a common fund is thereby created. 3 Herbert Newberg, *Newberg on Class Actions* § 6975, at 1265–66 (1977). *See e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *In re King Resources Co. Securities Litig.,* 420 F.Supp. 610 (D.Colo.1976). Justification for interim fee awards lies in the often long lapse of time between the filing of a complaint and the final disposition of the case. For example, in class actions, administration of the class often involves delays in identifying and notifying the class members, examining claims and allocating the lump sum settlement or award among the class members. 3 Herbert Newberg, *Newberg on Class Actions* § 6975a (1977). The allowance of interim attorney fees supports the conclusion that once the fund is created, the attorney has more than an expectation to a fee award, he or she has a vested right in that award.

On September 16, 1991, this court concluded that a refund of the illegal taxes was warranted, thereby creating a fund consisting of the refunds due to the named plaintiffs and members of any class that was thereafter certified. While the issue of class certification was not finalized at that point, the fund was created and would thereafter be automatically enlarged for the inclusion of the class if and when certified. That the size of the fund and the ultimate number of people participating in the fund had not yet been determined did not undermine the vesting of the attorneys' right to be reasonably compensated for their work in producing the fund. *See United Fed'n of Postal Clerks v. United States,* 61 F.R.D. 13 (D.D.C.1973) (allowing payment from the fund to attorneys for past legal work where the parties had agreed to a consent order outlining procedures for postal employees to establish a claim for back compensation of overtime work, even though actual class recovery was still subject to extremely rough estimation since neither the approximate number nor the approximate amount of each claim was determinable at that juncture).

In addition, in determining whether rights have vested, "courts should apply a

balancing test that weighs public interest and statutory objectives against reasonable expectations and substantial reliance." *Ficarra*, 849 P.2d at 17 (citing Ray H. Greenblatt, *Judicial Limitations on Retroactive Civil Legislation*, 51 Nw. U.L.Rev. 540, 561 (1956)). A party's "settled expectations honestly arrived at with respect to the substantive interests ought not be defeated." *Ficarra*, 849 P.2d at 16 (citing 2 Norman J. Singer, *Sutherland Statutory Construction* § 41.05, at 366 (4th ed. 1986)).

The common fund doctrine has enjoyed long term and widespread use. In class action lawsuits where a fund is created for the benefit of the class, either through settlement or judgment on the merits, the common fund doctrine is widely adhered to as a method for proportionately spreading the attorneys fees among the class members. *See* 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1803 (1986), and cases cited therein; *County Workers Compensation Pool v. Davis*, 817 P.2d 521, 526 (Colo.1991). In fact, adherence to the common fund doctrine is so prevalent that the justification for awarding interim fees after a fund has been created, in part, "lies in the certainty that counsel will ultimately receive a fee award.... The only unanswered question is the size of the award, not its propriety." 3 Herbert Newberg, *Newberg on Class Actions* § 6975, at 1267 (1977).

Furthermore, it is fair to say that in accepting this case, the attorneys relied on the expectation of payment from the common fund if the litigation was successful. The expected fee recovery is one of the key incentives for plaintiffs' attorneys to litigate class actions. *See* John C. Coffee, *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class & Derivative Actions*, 86 Colum. L.Rev. 669 (1986).

The common fund doctrine is applicable in the current situation because the attorneys, through their labor, have created a fund for the benefit of the absentee plaintiffs and

equity requires that they be reimbursed for the market value of the legal services rendered. Based on the rationale underlying the common fund doctrine, as well as the reasonable expectations and substantial reliance of the attorneys in this case, we find the attorneys' right to a fee award from the common fund vested on September 16, 1991, prior to the enactment of section 13–17–203 in April of 1992. Therefore, section 13–17–203 could not be retrospectively applied to defeat class counsel's right to a court-ordered reasonable fee to be paid out of the common fund.

### VI.

Our ruling today applies to the unusual facts and timing presented in this case only.[6] In the present case, because we find that the attorneys' right to a fee award vested before the enactment of section 13–17–203, the Colorado Constitution prohibits application of section 13–17–203 to the facts before us. We therefore reverse the district court ruling on the attorney fees award. We remand with directions to the trial court to determine reasonable attorney fees to be awarded from the common fund.

6. Because of our ruling on these facts, we do not and may not reach the broader issues concerning constitutionality of the statute as applied to common fund attorney fees that vest after the enactment of section 13–17–203.