Abel TREVINO, Petitioner,

v.

HHL FINANCIAL SERVICES, INC., a De-
laware corporation; and University Hos-
pital, a Colorado non-profit corporation,
Respondents.

No. 96SC372.

Supreme Court of Colorado,
En Banc.

Sept. 15, 1997.

As Modified on Denial of Rehearing
Oct. 20, 1997.

Thomas D. McFarland, Golden, for Peti-
tioner.

McKenna & Cuneo, L.L.P., Ann E. Edel-
man, Denver, for Respondent University
Hospital.

Machol & Johannes, P.C., Jacques A. Machol, III, Denver, for Respondent HHL Financial Services, Inc.

Justice KOURLIS delivered the Opinion of the Court.

This case raises the question of whether a hospital enforcing its statutory lien for medical services upon proceeds of a personal injury settlement must contribute a proportionate share of the attorney fees incurred in obtaining the recovery. In *Trevino v. HHL Financial Services, Inc.*, 928 P.2d 766 (Colo. App.1996), the court of appeals held that neither the common fund doctrine nor a provision in section 38–27–101, 16A C.R.S. (1996 Supp.), giving an attorney's lien precedence over a hospital lien, requires the holder of the hospital lien to pay a share of the attorney fees. We agree, and accordingly affirm the court of appeals.

## I.

Petitioner Abel Trevino was injured in a slip-and-fall accident at his apartment complex on December 31, 1992, and was admitted to University Hospital for treatment. Prior to receiving treatment, Trevino signed an "Admission Agreement" in which he agreed to pay all costs for his care and all costs, including attorney fees, necessitated by collection efforts.

University Hospital provided Trevino with medical care and billed him under several different accounts, the largest of which was for the principal amount of $13,703.97. Trevino retained an attorney and began pursuing a tort claim against the owner of the apartment complex where the accident occurred. The apartment owner was represented by the liability insurer, Hartford Insurance Company (Hartford).

University Hospital assigned Trevino's account in the amount of $13,703.97 to defendant HHL Financial Services, Inc. (HHL), for collection.[1] On October 11, 1993, HHL filed a hospital lien pursuant to section 38–27–101, 16A C.R.S. (1996 Supp.), on behalf of University Hospital in the amount of $13,703.97 against any amount Trevino might recover from Hartford or any other person as damages arising out of his injuries.

On January 18, 1994, Hartford settled Trevino's tort claim by issuing two checks to Trevino totaling $80,000. One check was in the amount of the $13,703.97 hospital lien and was jointly payable to "HHL for University Hosp," Trevino, and Trevino's attorney. The other check, for the balance of the settlement amount, was jointly payable to Trevino and his attorney. Trevino's attorney received one-third of the latter check.

Trevino notified HHL of the settlement, but sought to reduce the amount payable on the hospital lien by a proportionate share of attorney fees and by the alleged amount of his comparative negligence, although that issue had never been litigated. Specifically, Trevino proposed to pay HHL $4,562.16 in full satisfaction of his outstanding obligations to University Hospital. HHL refused this offer and demanded payment of the hospital lien in full.

On April 29, 1994, Trevino filed suit in Denver District Court against HHL and University Hospital seeking a declaratory judgment as to the rights of the parties with respect to the check from Hartford in the amount of $13,703.97.[2] Both defendants counterclaimed against Trevino seeking payment of the hospital lien plus interest and attorney fees. Trevino asserted various affirmative defenses to the counterclaims. On August 9, 1994, HHL filed a motion for par-

---

**1.** Section 38–27–105, 16A C.R.S. (1982), provides: "Any party claiming a lien under the provisions of this article may assign, in writing, his claim and lien to any other party, who shall thereafter have all the rights and remedies of the assignor."

There is no evidence of a written assignment agreement in the record and Trevino questioned the existence of an assignment in a petition for

rehearing filed with the court of appeals. Trevino did not raise this as an issue in his petition for certiorari and it is not before us on this appeal. Therefore, for purposes of our analysis we presume there was a valid assignment.

**2.** The check was deposited in a trust account pending resolution of the dispute.

tial summary judgment on one of those defenses, accord and satisfaction. On October 26, 1994, University Hospital filed a motion for summary judgment on all legal issues in the case.

The parties appeared before the district court for trial on November 4, 1994. After hearing arguments from both sides, the district court granted University Hospital's motion and dismissed Trevino's claims. On January 27, 1995, the district court reduced its order to written form, requiring Trevino to pay the hospital lien with statutory interest and to pay both defendants' attorney fees and costs. The court intended to determine the amount of interest, attorney fees, and costs at a later hearing.

Trevino appealed, arguing that under either the common fund doctrine or section 38–27–101, the defendants were required to pay a share of the attorney fees incurred in obtaining the settlement with Hartford.[3] The court of appeals held that the common fund doctrine does not apply to hospital liens, and that pursuant to section 38–27–101, the attorney's lien is satisfied "off the top" and does not reduce the amount of the hospital lien. *Trevino,* 928 P.2d at 769–70. Trevino petitioned this court to review the court of appeals decision.[4]

## II.

■ Trevino notes that HHL and University Hospital were passive beneficiaries of the settlement his attorney negotiated with Hartford and that without the settlement, they would not have been able to collect their debt. Hence, he argues that the common fund doctrine requires HHL and University Hospital to share in the attorney fees that were generated in creating the settlement.

■ Trevino correctly asserts that the common fund doctrine is based on principles of equity that require those who have benefited from litigation to share its costs. *See Kuhn v. State,* 924 P.2d 1053, 1057 (Colo. 1996). However, summarizing the doctrine in that fashion describes the roof of the building, but not its walls or foundation. As we noted in *Kuhn,* the common fund doctrine is grounded in fiduciary law. *Id.* at 1058. Hence, when a plaintiff takes legal action to create or preserve assets of a trust for the benefit of all beneficiaries to the trust, those beneficiaries must pay a proportionate share of the costs incurred in achieving the benefit. *Id.* Implicit in the doctrine are two requirements: (1) that all beneficiaries are similarly situated; and (2) that but for the plaintiff's actions, the beneficiaries would have been forced to institute the litigation themselves in order to achieve any benefit.

These requirements are frequently satisfied in class action lawsuits, *see id.,* or in litigation preserving a pool of resources, such as a pension fund, in which a number of persons have a common interest, *see Agee v. Trustees of Pension Bd.,* 33 Colo.App. 268, 272–73, 518 P.2d 301, 304 (1974). Both this court and the court of appeals have also

3. In his notice of appeal, Trevino did not contest the trial court's decision to award attorney fees to the defendants. However, in his brief before the court of appeals, Trevino argued that a plaintiff cannot be required to pay the defendant's attorney fees in a declaratory judgment action. The court of appeals did not address this argument, and Trevino did not raise it in his petition for certiorari.

If the district court has not yet conducted a hearing to determine the amount of attorney fees Trevino owes to University Hospital, we presume such a hearing will be held following remand of the case. In that event, we urge the district court, in fixing attorney fees, to consider the equities of the case. The Admission Agreement required Trevino to pay attorney fees in the event

of an action brought for collection; however, the issues raised here exceed the bounds of any simple collection effort and present important questions of first impression.

4. We granted certiorari to consider two issues: (1) whether a hospital can collect 100% of its purported lien by ignoring the common fund doctrine which has clearly been recognized by Colorado courts, and successfully refuse to help pay the cost of obtaining the funds from which the lien will be satisfied; and (2) whether a hospital can collect 100% of its purported lien by ignoring the plain language of the hospital lien statute which gives the attorney's lien superiority over the hospital lien.

applied the common fund doctrine to require a subrogated insurer to share in the costs of litigation where a plaintiff obtains a recovery from a third party tortfeasor and the subrogated claim is paid out of that recovery. *See County Workers Compensation Pool v. Davis*, 817 P.2d 521, 526 (Colo.1991) (holding that workers' compensation carrier which had subrogated claim for workers' compensation benefits was required to pay a reasonable share of attorney fees and court costs incurred in tort litigation producing settlement from which subrogated claim was satisfied);[5] *Castellari v. Partners Health Plan of Colo., Inc.*, 860 P.2d 593, 595 (Colo.App.1993) (holding that insurer which had subrogated claim for medical benefits was required to pay a proportionate share of attorney fees and costs incurred in litigation producing recovery from which claim was paid).

■ Several factors support the extension of the doctrine to a subrogated insurer. Subrogation is a contractual or statutory right pursuant to which a portion of an injured plaintiff's rights against the tortfeasor responsible for the injuries are assigned to the subrogee. In the context of insurance, the subrogee/insurer pays for the insured's injuries or compensation at the outset and, as a result, succeeds to the insured's rights against the tortfeasor for reimbursement of the amount paid. The insurer and insured are similarly situated because they have similar rights against the tortfeasor. The insurer's right to reimbursement is dependent upon a recovery from the tortfeasor, and the insurer does not have any right to reimbursement from the insured's other assets. Thus, the insurer must either bring an action itself, or rely on the insured to bring one. If the insured brings an action, and the insurer does not contribute, the insurer may be entitled to share in the fund created by a settlement or judgment against the tortfeasor, but the courts have required the insurer also to share in the attorney fees and costs expended in obtaining the fund. *See Davis*, 817 P.2d at 526–27; *Castellari*, 860 P.2d at 595.

In the context of litigation brought to preserve a trust or pension fund, class action lawsuits, or subrogated insurance claims, the beneficiaries are similarly situated with respect to the fund and but for the litigation, they would have had nothing. Hence, the requirements implicit in the common fund doctrine are satisfied. This case arises in a fundamentally different context because University Hospital is Trevino's creditor, with only its statutory right to a hospital lien connecting it to the personal injury fund. *See* § 38–27–101, 16A C.R.S. (1996 Supp.).[6]

Therefore, Trevino and the defendants were not similarly situated with respect to the claim against the apartment owner or the fund created as a result of that claim. Unlike a subrogated insurer, the defendants did not have any rights against the tortfeasor,

---

**5.** We framed our opinion in *Davis* in terms of a "rule of equitable apportionment" and did not refer to the common fund doctrine. *Davis*, 817 P.2d at 526–27. However, the common fund doctrine is essentially a rule of equitable apportionment and we have consistently recognized *Davis* as a common fund case. *See Kuhn*, 924 P.2d at 1060; *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 n. 3 (Colo.1996).

**6.** The statute provides in its entirety:
Every hospital duly licensed by the department of public health and environment, pursuant to part 1 of article 3 of title 25, C.R.S., which furnishes services to any person injured as the result of the negligence or other wrongful acts of another person and not covered by the provisions of the "Workers' Compensation Act of Colorado" shall, subject to the provisions of this article, have a lien for all reasonable and necessary charges for hospital care upon the net amount payable to such injured person, his heirs, assigns, or legal representatives out of the total amount of any recovery or sum had or collected, or to be collected, whether by judgment, settlement, or compromise, by such person, his heirs, or legal representatives as damages on account of such injuries. The lien of attorneys and counselors at law created by section 12–5–119, C.R.S. shall have precedence over and be senior to the lien created under this section. The provisions of this article shall not apply to any hospital charges incurred subsequent to any such judgment, settlement, or compromise.
§ 38–27–101, 16A C.R.S. (1996 Supp.).

nor could they have joined in a lawsuit.[7] Trevino was certainly not acting for the benefit of the defendants. He pursued his claim against the apartment owner for his own benefit and the creation of the settlement fund inured primarily to his benefit by enabling him to pay his debt. The benefit to the defendants was an incidental, not an intended, outcome of the litigation.

Further, the defendants' right to payment of Trevino's debt was in no way contingent upon recovery against the apartment owner.[8] The hospital's right of collection on its lien flows from the personal injury litigation, but its cause of action does not. The defendants' cause of action or right to payment arose from the provision of medical care to Trevino for which he agreed to pay, regardless of the outcome of the personal injury action. *See Sisters of Charity of Providence v. Nichols,* 157 Mont. 106, 483 P.2d 279, 283 (1971) ("[T]he hospital's claim and lien is based upon a debt owed the hospital by its patient in whose shoes it does not stand for any purpose, the debt being owed to it by its patient irrespective of the patient's rights against a third party wrongdoer."); *Bashara v. Baptist Mem'l Hosp. Sys.,* 685 S.W.2d 307, 311 (Tex.1985) ("[W]hile the insurance carrier's recovery in a workers' compensation case is based on subrogation principles, whereby the carrier 'stands in the shoes' of the employee, with no greater rights than the employee himself has, the hospital's rights are based on the independent debtor-creditor relationship.").

The defendants and Trevino were not similarly situated with respect to the fund and Trevino's debt to the defendants existed entirely separate from the personal injury action. Under those circumstances, we find the common fund doctrine inapplicable.

We note that a majority of other jurisdictions faced with this question have held that the hospital is not required to pay a share of attorney fees generated in creating a fund from which the hospital's lien is paid. *See Mitchell v. Huntsville Hosp.,* 598 So.2d 1358, 1361–62 (Ala.1992); *City & County of San Francisco v. Sweet,* 12 Cal.4th 105, 48 Cal. Rptr.2d 42, 906 P.2d 1196, 1203–04 (1995); *Maynard v. Parker,* 54 Ill.App.3d 141, 11 Ill.Dec. 898, 369 N.E.2d 352, 354–55 (1977), *aff'd,* 75 Ill.2d 73, 25 Ill.Dec. 642, 387 N.E.2d 298 (1979); *Broadlawns Polk County Hosp. ex rel. Fenton v. Estate of Major,* 271 N.W.2d 714, 716–17 (Iowa 1978); *Harlow v. Lloyd,* 15 Kan.App.2d 497, 809 P.2d 1228, 1230–33 (1991); *Sisters of Charity,* 483 P.2d at 283; *Hillcrest Med. Ctr. v. Fleming,* 643 P.2d 868, 869–70 (Okla.Ct.App.1982); *Bashara,* 685 S.W.2d at 310–11; *Lynch v. Deaconess Med. Ctr.,* 113 Wash.2d 162, 776 P.2d 681, 683–84 (1989).

At least one state, however, has held otherwise. *See Martinez v. St. Joseph Healthcare Sys.,* 117 N.M. 357, 871 P.2d 1363 (1994). In *Martinez,* the Supreme Court of New Mexico concluded that a private hospital's right to assert a statutory lien, and its right to recovery on that lien, depend on the obtaining of a judgment or settlement. *Martinez,* 871 P.2d at 1366. The proceeds of the judgment or settlement operate as a fund, without which the hospital would have nothing upon which to assert a hospital lien. *Id.* The court concluded that by seeking payment from the fund in reliance on the lien,

---

**7.** We note that the court of appeals has specifically limited the application of the common fund doctrine to cases in which a party actually had a right to intervene in the litigation producing a fund and elected not to do so on an active basis. *See Osborne v. State Farm Mut. Auto. Ins. Co.,* 923 P.2d 304, 305–06 (Colo.App.1996) (holding that common fund doctrine was not applicable where insurer expressed intent to pursue claim independently of plaintiff's litigation); *Schenck v. Minolta Office Sys., Inc.,* 873 P.2d 18, 19 (Colo. App.1993) (holding that state, which received an award as a result of litigation, was not required to contribute share of attorney fees incurred in

litigation because it did not have a legal interest in award until after judgment and did not have an opportunity to intervene).

**8.** Although the defendants were not entitled to participate in the litigation, by filing and giving notice of a proper hospital lien, they were able to hold any person against whom there was such a lien and who paid any money to Trevino, liable for the amount of the hospital lien up to the net amount paid to Trevino. *See* § 38–27–103, 16A C.R.S. (1982).

the hospital directly receives the benefits of the work done by the patient's attorney and the common fund doctrine requires the hospital to share in the legal expenses. *Id.* at 1366–67.[9] The court subsequently limited application of the common fund doctrine to private hospitals, reasoning that the doctrine is grounded in quantum meruit, implied contract or unjust enrichment, and public hospitals are immune from liability under those equitable theories. *See Eaton, Martinez & Hart v. University of New Mexico Hosp.*, 123 N.M. 76, 934 P.2d 270, 273 (1997).

■ We see a critical distinction, not between public and private hospitals, but rather between parties, including subrogees, who have a contingent interest in litigation on the one hand, and creditors holding a valid hospital lien on the other. Hence, we decline to follow the direction charted by the *Martinez* case. When a hospital treats a patient's injuries, it has an enforceable claim for full payment for its services, regardless of the patient's financial status.[10] The legislature clearly intended to offer hospitals additional protection for medical services debts by enacting the hospital lien statute. It would be ironic indeed if we were now to determine that the existence of the lien in fact prejudiced the hospital by creating a nexus between the hospital and the personal injury recovery such that the hospital was required to pay attorney fees out of its lien amount.

### III.

■ The second issue upon which we granted certiorari involves the interpretation of section 38–27–101, 16A C.R.S. (1996

Supp.). Trevino contends that because the statute expressly provides that an attorney's lien has precedence over a hospital lien, the hospital is required to pay a proportionate share of the attorney fees incurred in obtaining a recovery. The court of appeals held that section 38–27–101 merely establishes the priority of the two types of liens, and does not require the holder of a hospital lien to pay attorney fees. *Trevino*, 928 P.2d at 770. We conclude that the court of appeals correctly interpreted section 38–27–101.

"In construing the language of a statute, courts must ascertain and give effect to the intent of the General Assembly in enacting the statute." *Denver Area Labor Fed'n, AFL–CIO v. Buckley*, 924 P.2d 524, 527 (Colo.1996). "To determine such intent, courts should first look to the statutory language giving words and phrases their commonly understood meaning." *Id.*

Section 38–27–101 provides that a hospital that furnishes services to a person injured as the result of a third party's negligent or wrongful acts is entitled to "a lien for all reasonable and necessary charges for hospital care upon the net amount payable to such injured person . . . out of the total amount of any recovery or sum had or collected . . . as damages on account of such injuries." § 38–27–101, 16A C.R.S. (1996 Supp.). The statute plainly provides that the lien is in the full amount of the hospital charges. There is not any language in the statute suggesting that the hospital's recovery is limited to the difference between the "reasonable and necessary charges" and the attorney fees incurred in obtaining the damages award. The General Assembly could easily have included such a limitation but did not.

**9.** Relying upon the reasoning set forth in *Martinez*, the Supreme Court of Nebraska held that "hospitals are liable for their pro rata portion of the legal expenses and costs where they seek payment out of a judgment or settlement for the amount of a lien filed pursuant to [the hospital lien statute]." *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352, 361 (1994). Following this decision, the Nebraska legislature added the following language to the hospital lien statute: "A physician, nurse, or hospital claiming a lien under this section shall not be liable for attorney's fees and

costs incurred by the injured person in securing the judgment, settlement or compromise, but the lien of the injured person's attorney shall have precedence over the lien created by this section." Neb.Rev.Stat. § 52–401 (1996). It is doubtful that the court's decision in *Bloomquist* survives this amendment.

**10.** We do not comment on the question of when a hospital should compromise a claim in order to further a settlement.

The fact that an attorney's lien is senior to a hospital lien does not suggest that the hospital is required to pay a proportionate share of attorney fees. Giving the attorney's lien priority simply means that it is satisfied first. The hospital lien is then satisfied from the "net amount payable to [the] injured person." § 38–27–101, 16A C.R.S. (1996 Supp.). Although the hospital lien cannot be collected until after the attorney's lien has been paid, nothing in the statute indicates that the amount of the hospital lien is reduced by the payment of the attorney's lien. If the injured person's recovery is not sufficient to satisfy both the attorney's lien and the hospital lien, the attorney's lien must be satisfied first. This does not mean, however, that the patient is no longer liable for the full amount of the hospital charges. The hospital would still be entitled to collect any deficiency from other assets.

In this case, Trevino's attorney was entitled to a lien in the amount of one-third of the entire $80,000 settlement award he negotiated with Hartford. The settlement funds were sufficient to satisfy both the attorney fees and the hospital lien. Thus, the defendants were not required to look to other sources for payment of Trevino's medical bills.

We conclude that the court of appeals correctly held that HHL and University Hospital were not liable for a share of the attorney fees incurred in obtaining the settlement. We therefore affirm the court of appeals.

SCOTT, J., does not participate.