956 P.2d 630 (1997)
DENARGO MARKET NEIGHBORS COALITION; Globeville Civic Association; Sherman Agency; Hal Naiman; Cynthia Chapman; Pam Stearman; Paulette Hirsch; Clyde Gagnon; Paulette Gagnon; and Isadore Kozatch, Plaintiffs-Appellants,
v.
VISSER REAL ESTATE INVESTMENTS, a Colorado general partnership; the Salvation Army, a non-profit corporation; the City and County of Denver, a municipal corporation; the Department of Zoning Administration for the City & County of Denver; Dorothy Nepa, in her official capacity as Zoning Administrator; the Board of Adjustment for Zoning Appeals for the City and County of Denver; Catherine A. Cheever, Virginia Martinez, Charles Cousins, Sharron Frank Klein, and Kevin Malloy, in their official capacities as members of the Board of Adjustment, Defendants-Appellees.
No. 96CA1612.
Colorado Court of Appeals, Div. II.
October 16, 1997.
Rehearing Denied November 28, 1997.
Certiorari Denied May 18, 1998.
*631 Senn Lewis Visciano & Strahle, P.C., Frank W. Visciano, Brian J. Reichel, Denver, for Plaintiffs-Appellants.
Gregory A. Ruegsegger, Denver, for Defendant-Appellee Visser Real Estate Investments.
Holme, Roberts & Owen, LLP, Lawrence L. Levin, Denver, for Defendant-Appellee the Salvation Army.
Daniel E. Muse, City Attorney, Thomas Bigler, Assistant City Attorney, Denver, for Defendants-Appellees City and County of Denver, the Department of Zoning Administration, Dorothy Nepa, the Board of Adjustments for Zoning Appeals, Catherine A. Cheever, Virginia Martinez, Charles Cousins, Sharron Frank Klein, and Kevin Malloy.
Opinion by Judge CRISWELL.
In this C.R.C.P. 106(a)(4) action, plaintiffs, consisting of various neighborhood associations and property owners (Denargo group), appeal from the judgment affirming the approval by the Denver Board of Adjustment for Zoning Appeals (Board) of the issuance of a permit to the defendant Salvation Army to operate a homeless shelter in a building located at the Denargo Market in Denver. We reverse.
At all times relevant to this dispute, the Denver zoning ordinance, Denver Revised Municipal Code § 59-80(2)(e) I.c., provided that no more than two residential care (homeless shelter) uses could be located within a radius of 4,000 feet of each other.
In 1993, the Salvation Army applied for a zoning permit to operate a homeless shelter on the subject property. Such request was denied on the basis that there were already two homeless shelters, including one operated by the Sacred Heart Church (Sacred Heart House), within 4,000 feet of the proposed *632 use. This denial was appealed to the Board, and a variance from the ordinance was requested, which was denied by the Board, and no judicial review of that decision was sought.
However, in October 1994, the Denver zoning administrator reclassified the use of Sacred Heart House from a homeless shelter to a "rooming and/or boarding house." The Denargo group filed an appeal from this reclassification with the Board in November 1994.
Five days after this appeal was filed, the zoning administrator issued a permit allowing the Salvation Army to operate a homeless shelter on the subject property. The issuance of this permit was based upon the conclusion that there was then only one homeless shelter within the relevant area, the Sacred Heart House use no longer being considered to be such.
The Denargo group also appealed this latter action by the zoning administrator to the Board, but that appeal was held in abeyance, pending completion of the administrative and judicial review of the propriety of the reclassification of the use of the Sacred Heart House.
In April 1995, the Board invalidated the zoning administrator's reclassification of Sacred Heart House. It concluded that the use of that property was not for a "rooming and/or boarding house" within the meaning of the ordinance. Although the zoning administrator sought judicial review of the Board's reversal of her decision, the reviewing court affirmed the Board's order. In doing so, the court determined that, in rejecting the zoning administrator's determination that Sacred Heart House was operating a rooming and boarding house, the Board necessarily determined that the use was that of a homeless shelter. No further appeal was taken from this judicial declaration.
After this court decision respecting Sacred Heart House issued, the Denargo group's appeal of the zoning administrator's issuance of the permit to the Salvation Army was heard by the Board and denied. In its decision in this appeal, the Board recognized that Sacred Heart House's classification as a rooming and boarding house had been declared invalid, both by the Board and in the later judicial proceedings, but it concluded that such invalidation did not "automatically" cause that property to "revert" to its previous classification, and it refused to determine, independently, the nature of the use of the Sacred Heart House.
As a result, the Denargo group initiated this C.R.C.P. 106(a)(4) proceeding for review of the Board's ruling. The trial court also concluded that the previous use classification of Sacred Heart House was not reinstated upon invalidation of the zoning administrator's reclassification, and it affirmed the Board's ruling.
When reviewing a local agency's quasi-judicial decision under C.R.C.P. 106(a)(4), a court must affirm, unless it concludes that the agency exceeded its jurisdiction or abused its discretion by acting arbitrarily or capriciously. Platte River Environmental Conservation Organization, Inc. v. National Hog Farms, Inc., 804 P.2d 290 (Colo.App.1990).
Because the review of the agency's decision is based solely on the administrative record, an appellate court is in the same position as a trial court, and it is required to apply the same standard of review. Hence, an appellate court is not bound by the determinations of the trial court in such an action. City of Colorado Springs v. Givan, 897 P.2d 753 (Colo.1995).
Here, the zoning administrator's act of reclassifying the Sacred Heart House use as a rooming and boarding house was admittedly improper. And, it was declared to be so both by the Board and by the later judgment approving that determination. Further, by appealing that reclassification decision to the Board before the zoning administrator issued any permit to the Salvation Army, the Denargo group gave notice of its claim that such reclassification was improper.
Hence, the issue presented to us is whether the invalidation of the reclassification of the Sacred Heart House use had the effect of invalidating the later permit issued to the Salvation Army. We conclude that it did.
*633 The zoning administrator and the other defendants, relying upon Spiker v. City of Lakewood, 198 Colo. 528, 603 P.2d 130 (1979), argue that, although the classification assigned to the Sacred Heart House use prior to the zoning administrator's change in classification was that of a homeless shelter, such previous classification was not re-imposed upon that property when the change was declared invalid. Hence, they say, at the time of the Board's decision upon the Salvation Army's request for a permit, the Sacred Heart House use was not classified as a homeless shelter (which status would have prevented the issuance of the Salvation Army permit); it was, they argue, not classified for any use at that time.
In contrast, the Denargo group asserts that, upon the Board's determination that the zoning administrator's change in classification of the Sacred Heart House use was invalid, that decision necessarily caused its classification to revert to its former status as a homeless shelter, thereby precluding the issuance of another homeless shelter permit within a radius of 4,000 feet. Further, they assert that, pursuant to the terms of the Denver City Charter, their appeal of Sacred Heart House's reclassification, which was filed before the zoning administrator issued her permit to the Salvation Army, stayed the effect of that reclassification, so that it was never subject to an effective use reclassification.
We agree with the Denargo group.
First, Spiker v. City of Lakewood, supra, has no relevance to the issue presented to us here. There, an ordinance was adopted changing the authorized use of a parcel of ground, but providing that, unless certain actions were taken by the landowner within a specified period, the land would automatically revert to its former zoned status. No one contested the propriety of the rezoning itself; no issue was presented, therefore, as to what zoning the parcel would have borne had the rezoning been declared invalid. Rather, the supreme court held only that the provision for a reversion to the prior zoning, should certain conditions not be met, called for "automatic" rezoningan action not authorized by Colorado law.
Here, in contrast, the reclassification has been invalidated. In such circumstances, the uniform rule is that the improper action is to be disregarded and the prior valid zoning restrictions will continue in effect. Bosse v. City of Portsmouth, 107 N.H. 523, 226 A.2d 99 (1967); Concordia Collegiate Institute v. Miller, 301 N.Y. 189, 93 N.E.2d 632 (1950). See generally 3 A. & D. Rathkopf, The Law of Zoning & Planning§ 36.03 (1996).
Further, if the zoning administrator's position were sustained, it would mean that any land that is improperly reclassified or rezoned would, upon the issuance of a declaration of invalidity, either be free to be used for any purpose (there being no valid restriction in place) or not be useable at all. See Denver Revised Municipal Code § 59-26(e)("No structure shall be used or occupied until a zoning permit for such use and occupancy shall have been issued by the department of zoning administration.") The first conclusion would not serve the public's interest, and the second would present important due process and "automatic" rezoning questions under Spiker.
We also agree with the Denargo group that the Denver City Charter § B1.19-4, which provides that an appeal to the Board "stays all proceedings in furtherance of the action appealed from," had the effect of maintaining Sacred Heart House in a state of zoning status quo, pending resolution of that appeal. And, the permit was issued to the Salvation Army while this stay was in effect.
This automatic stay provision is substantially similar to the stay provisions to be found in the Standard State Zoning Enabling Act. See 3 Rathkopf, supra, § 37.04. See also § 31-23-307(3), C.R.S.1997 (zoning powers of statutory cities). Such provisions have consistently been interpreted as preserving the status quo ante, pending completion of the review of the rezoning action. See, e.g., Lindner v. Incorporated Village of Freeport, 61 Misc.2d 667, 305 N.Y.S.2d 581 (1969).
Hence, at the time of the zoning administrator's issuance of the permit to the Salvation Army, Sacred Heart House was still classified as a homeless shelter, and by the *634 time of the Board's review of the issuance of that permit, its reclassification had been invalidated. Accordingly, the Board was required, as a matter of law, to invalidate the Salvation Army permit. See Russell v. City of Central, 892 P.2d 432, 436 (Colo.App.1995) ("If the amending [zoning] ordinance is invalid, not only is the present zoning action invalid but anyfuture action premised on the amendment would likewise be invalid." (emphasis supplied)).
We conclude, therefore, that the Board erred, as a matter of law, in approving the issuance of the permit to the Salvation Army.
The judgment of the district court is reversed, and the cause is remanded to that court with directions to enter a decree consistent with the views contained in this opinion.
DAVIDSON and ROTHENBERG, JJ., concur.