**Lewis KILBOURN, Plaintiff–Appellant,**

v.

**FIRE AND POLICE PENSION ASSOCIATION and Board of Directors of Fire and Police Pension Association, Defendants–Appellees.**

No. 97CA0308.

Colorado Court of Appeals, Div. II.

May 28, 1998.

Rehearing Denied June 25, 1998.

Certiorari Denied Jan. 25, 1999.

Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Thomas B. Buescher, Denver, Colorado, for Plaintiff–Appellant

William Morris, General Counsel, Englewood, Colorado, for Defendants–Appellees

Opinion by Judge PLANK.

Plaintiff, Lewis Kilbourn, appeals the district court's judgment which upheld the discontinuation of his occupational disability pension by the Fire and Police Pension Association (FPPA), as affirmed by its Board of Directors (Board). We affirm.

Plaintiff was formerly employed as an officer for a city police department. In 1980, he

was awarded an occupational disability pension.

In 1986, plaintiff began employment as a detention officer for a county sheriff's department. In 1988, his title was changed to deputy sheriff. As required, plaintiff reported his employment and income to the FPPA. However, he continued to receive his occupational disability pension.

In 1995, the FPPA found, after a hearing and without medical reexamination, that plaintiff's occupational disability had ceased to exist because he had resumed full-time employment in a position having duties directly involved with police protection. Based upon the existing statutory scheme, including amendments made subsequent to his 1980 award, plaintiff's occupational disability pension was discontinued by the FPPA.

That decision was affirmed on review by the board and the district court. This appeal followed.

### I.

Plaintiff contends that retroactive application of an amended statute to support the revocation of his occupational disability pension is violative of the provisions barring *ex post facto* laws contained in both the United States and Colorado constitutions. Specifically, plaintiff argues that the amended statutory scheme was unconstitutionally applied because it was retrospective in operation and because it resulted in the impairment of his vested contractual right to a disability pension. We find neither argument persuasive.

### A. Retrospective Operation

■ Although a statute that is retrospective in its operation is constitutionally prohibited, the retroactive application of a statute is not necessarily unconstitutional. Retroactive application is permitted where the statute effects a change that is merely procedural or remedial in nature. *Kuhn v. State,* 924 P.2d 1053 (Colo.1996).

■ This is because neither the abolition of an old remedy nor the substitution of a new one constitutes the impairment of a vested right nor the imposition of a new duty, for there is no such thing as a vested right in remedies. Statutes are classified as remedial if they do not create, eliminate, or modify vested rights or liabilities. *Colorado Department of Social Services v. Smith, Harst & Associates, Inc.,* 803 P.2d 964 (Colo.1991).

Subsequent to plaintiff's 1980 award, applicable fire and police pension statutes were amended to provide that occupational disability benefits must be discontinued if, subsequent to such benefits being awarded but prior to a decision of the board that an occupational disability ceases to exist, a member is employed or reemployed, "pursuant to either an agreement or court order," in a full-time position, "the duties of which are directly involved with the provision of police or fire protection as determined by the board." Section 31–31–806, C.R.S.1997.

Plaintiff argues that the amended statute is not remedial because it resulted in the elimination of his occupational disability pension. However, the amended statute is not the only legislatively created procedure used to determine continued eligibility for occupational disability benefits.

The statutory scheme also provides that, at any time that an occupational disability ceases to exist, based upon periodic reexamination as may be required by the Board, a member retired for such disability may be restored to active service, and benefits are then to be discontinued. Section 31–31–805(2)(a), C.R.S.1997.

Plaintiff concedes that this statutory scheme has essentially been in effect since he was awarded occupational disability benefits in 1980. At that time, medical reexamination was the sole procedure for determining a disabled officer's continued eligibility for such benefits. However, the statutory scheme has consistently provided that a disabled officer's benefits are to be discontinued if his or her occupational disability ceases to exist such that the officer could be restored to active service.

Here, we agree with the district court that the essential features of the statutory scheme have not changed since plaintiff was awarded an occupational disability pension, that the amended statute establishes an extension of

the existing remedy provided through the reexamination process, and that there is no need for reexamination by physicians whose sole purpose would be to determine whether plaintiff could perform police duties which he was already performing in his capacity as a deputy sheriff.

■ Thus, we similarly agree with the district court's conclusion that the amended statute provides an alternative remedy for determining a claimant's continuing eligibility for occupational disability benefits, that it is remedial in nature, and that its retroactive application in this case was therefore permissible.

### B. Contractual Rights

■ Although statutes are not presumed to create private contractual rights, they may constitute a contract, subject to the protections of the Contract Clause of the constitution, if the statutory language and the surrounding circumstances manifest a legislative intent to create an enforceable contractual right. *Colorado Springs Fire Fighters Ass'n v. City of Colorado Springs,* 784 P.2d 766 (Colo.1989).

■ Only vested contractual rights are constitutionally protected from statutory impairment. However, there are no bright line tests to determine what constitutes a vested right or when that right accrues. And, in determining whether a statute impairs vested rights, we must consider, *inter alia,* whether it defeats the reasonable expectations of affected persons or surprises persons who have long relied on a contrary state of the law. *Kuhn v. State, supra.*

Under certain circumstances, a claimant may have a vested right to his or her disability pension. *Spradling v. Colorado Department of Revenue,* 870 P.2d 521 (Colo.App. 1993) (claimant found to have a vested right in PERA disability pension).

Here, the relevant statutory scheme defines "occupational disability" as an "incapacity to perform assigned duties." Section 31–31–802(3), C.R.S.1997. "Assigned duties" are specific tasks designated by the employer for a particular position, but the term does not include duties that a member is not actually required to perform. Section 31–31–801(1), C.R.S.1997.

The district court found with record support that plaintiff, in his testimony before the Board, largely confirmed that he had responsibility for the duties set forth in his job description and that the essential nature of his job was one which involved the provision of police protection.

Plaintiff knew that his continued eligibility for occupational disability benefits was contingent upon his incapacity to perform the duties of a police officer. He thus could not reasonably have expected such benefits to be permanent, particularly after his reemployment in a position having duties directly involved with the provision of police protection.

There is no evidence that the General Assembly sought permanently to extend occupational disability benefits to claimants employed in positions having duties directly involved with the provision of police protection. To the contrary, the statutory scheme indicates a legislative intent to revoke occupational disability benefits to claimants who return to employment in such positions.

■ We agree with the district court's conclusion that plaintiff's occupational disability benefits, unlike pension benefits based upon age and/or service requirements, were vested but subject to divestment in the event his occupational disability ceased to exist.

■ Thus, we conclude that plaintiff's occupational disability pension was not a vested right giving rise to a contract clause claim under either the state or federal constitutions.

### II.

Plaintiff contends that the FPPA, in contravention of two amendments to the statutory scheme, exceeded its authority and its jurisdiction when it revoked his occupational disability pension. We disagree.

## A.

Plaintiff first claims that the FPPA exceeded its authority and jurisdiction by revoking his occupational disability pension despite a lack of evidence that he was employed "pursuant to an agreement or court order," as required by the amended statute.

The district court found that plaintiff failed to raise this issue in his hearing before the board, and that it may not be raised for the first time on review. Notwithstanding the issue of waiver, however, we agree with the district court's conclusion that the offer and acceptance of employment as a deputy sheriff is sufficient to establish an agreement to be so employed, and that the record contains competent evidence to support that conclusion. *See Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304 (Colo.1986).

## B.

Plaintiff also claims that the FPPA exceeded its jurisdiction by investigating and then revoking his disability pension 15 years after it had fully vested when amendments to the applicable statutory scheme prohibited such an investigation after that amount of time.

As modified, the statutory scheme provides that no investigation of a member who has been awarded a disability retirement shall be pursued if more than five years has elapsed since the date of the award. Section 31–31–803(4)(b), C.R.S.1997.

This amendment does not employ language, as some non-claim statutes do, providing that failure to comply with the limiting provision specifically bars a claim or deprives the board of jurisdiction over a member's continuing eligibility for disability. Thus, the limitations imposed by the amendment must be pleaded and proven as an affirmative defense. *See Dunton v. Whitewater West Recreation Ltd.*, 942 P.2d 1348 (Colo.App.1997).

We agree with the district court that plaintiff could not raise this issue for the first time on review. *See Marquez v. Industrial Claim Appeals Office*, 868 P.2d 1175 (Colo. App.1994).

Moreover, we also agree with the district court's conclusion that the FPPA did not "investigate" plaintiff within the meaning of the amended statutory scheme. After receiving plaintiff's reported income and employment information, the FPPA applied that part of the amended statutory scheme which provides that occupational disability benefits must be discontinued if a claimant is employed in a position having duties directly involved with the provision of police protection.

The district court concluded that the General Assembly did not contemplate that an individual who has been awarded occupational disability benefits because he claims he is medically unable to perform his police duties should continue to receive such benefits when, after one, five, or ten years, he returns to full-time police work.

Because the legislative scheme indicates a desire to return claimants whose disabilities no longer exist to their prior police and firefighter positions, we agree with the district court. In our view, the General Assembly did not intend those disability claimants who return to employment in such positions to continue to receive full occupational disability benefits.

## III.

Claiming that he was deprived of a federally guaranteed right under U.S. Const. art. I, § 10 (the Contracts Clause), plaintiff contends that the FPPA's revocation of his occupational disability pension violated 42 U.S.C. § 1983 (1994). We disagree.

Suits for violations of the Commerce Clause can be brought under § 1983. *Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). However, a violation of the Contracts Clause does not give rise to a § 1983 cause of action. *Carter v. Greenhow*, 114 U.S. 317, 5 S.Ct. 928, 29 L.Ed. 202 (1885).

In light of our conclusion that the discontinuation of plaintiff's occupational disability pension did not give rise to a Contracts

Clause claim, it is unnecessary to address the arguments raised as to this issue.

The judgment is affirmed.

JONES, J., concurs.

TURSI*, J., dissents.

**TURSI*, Judge, dissenting.**

I respectfully dissent.

In 1980, the Fire and Police Pension Association (FPPA) awarded plaintiff an occupational disability retirement pension. Fifteen years later, based on information it obtained from plaintiff's employer, the FPPA terminated that pension.

The FPPA is a creature of statute and its powers and limitations are contained in its organic statutes, § 31–31–101, et seq., C.R.S. 1997. The jurisdiction of FPPA to review awards is barred after 5 years by § 31–31–803(4)(b), C.R.S.1997, which reads:

> The board shall have the authority to investigate claims for disability retirement benefits at the time of initial application for benefits or subsequent to an award of benefits in order to determine eligibility or continuing eligibility for such benefits. The board shall appoint such investigators and other personnel as may be necessary to carry out this function. *No investigation of a member who has been awarded a disability retirement shall be pursued if more than five years has elapsed since the date of the award.* (emphasis added)

The emphasized language makes it indisputably obvious that the General Assembly intended that the FPPA was not to investigate benefit awards more than five years after the date of the award.

Here, however, it cannot be denied that 15 years after the award, the board pursued an investigation of plaintiff's award. Indeed, the FPPA's own evidence established that, as part of its research and review of plaintiff's records, it had sent an inquiry to plaintiff's employer. Specifically, the FPPA's letter of March 16, 1995, sought information on plaintiff's duties.

Without belaboring the obvious, I would note only that *Webster's Third New International Dictionary* 1189 (1986) includes in its definition of "investigation" the terms "detailed examination ... searching inquiry ... an official probe." Such investigation was, under the statute, expressly prohibited, and thus, its results cannot sustain the FPPA's action.

Inasmuch as jurisdiction may be raised at anytime, it is clear that the jurisdiction of the FPPA to act was properly placed before the trial court. None of the authority relied upon by the FPPA and the trial court involved challenges to the jurisdiction of the FPPA to act. Here, as discussed above, the position of the FPPA was that the investigation was not in fact an investigation, and therefore the time bar did not apply.

Therefore, I would reverse the judgment of the trial court and remand the matter to the trial court for further remand with instructions to reinstate plaintiff's pension.