**Marshall B. KRUPP, Renate D. Krupp, and C.S.A. Real Estate Development, LLC, a Colorado limited liability company, Plaintiffs–Appellants,**

v.

**The BRECKENRIDGE SANITATION DISTRICT, a Colorado Special District; The Board of Directors of the Breckenridge Sanitation District; and Andrew Carlberg, as Manager of the Breckenridge Sanitation District, Defendants–Appellees.**

No. 97CA1996.

Colorado Court of Appeals,
Div. II.

April 1, 1999.

Certiorari Granted May 22, 2000.

Baker & Hostetler, LLP, Michael G. Martin, Munir R. Meghjee, Denver, Colorado, for Plaintiffs–Appellants

Vranesh and Raisch, LLC, Eugene J. Riordan, Boulder, Colorado, for Defendants–Appellees

Opinion by Judge PLANK.

Plaintiffs, developers of a residential project within the territory of the Breckenridge Sanitation District (District), a special district providing sewer and wastewater services, appeal a judgment denying them relief under C.R.C.P. 106(a)(4), a summary judgment in favor of defendants, the District and its Board of Directors (Board), on plaintiffs' constitutional claims, and an order denying plaintiffs leave to amend their complaint. We affirm.

Plaintiffs designed a residential development involving a number of dwelling units organized into duplexes. At the instigation of the City of Breckenridge and the county planning commission, plaintiffs modified the design to include a total of 25 basically identical units, organized into 8 duplex and 3 triplex buildings. Upon applying for building permits, plaintiffs were informed by the

District that, according to its standard schedule, the mandatory plant investment fee (PIF) for each unit in a triplex would be approximately 80% higher than for each unit in a duplex building.

Plaintiffs appealed to the Board which affirmed the PIF determination. Plaintiffs then sought review of the Board's decision in the district court pursuant to C.R.C.P. 106(a)(4), and included additional claims for unlawful taking, violations of their constitutional equal protection rights, and for a determination that the Special Districts Act unconstitutionally delegates to the District legislative powers reserved to the General Assembly. The district court stayed the proceedings on all the other claims and conducted a hearing to review the District's decision pursuant to C.R.C.P. 106(a)(4). The trial court determined that the District had not exceeded its jurisdiction nor had it abused its discretion and, therefore, denied plaintiffs relief on that claim.

Plaintiffs then sought to amend their complaint to include as additional claims that the District had violated their procedural due process rights and civil rights violations pursuant to 42 U.S.C. § 1983 (1994). The parties· also filed cross-motions for summary judgment on the remaining claims. The trial court subsequently granted summary judgment to defendants on all the remaining claims and denied plaintiffs' motion to amend their complaint. This appeal followed.

## I.

■ Plaintiffs' primary contention is that the trial court erred by ruling that the PIF charged by the District is not an unlawful taking of plaintiffs' property. We disagree.

Plaintiffs rely on *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (*Nollan*); *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (*Dolan*); and *Ehrlich v. City of Culver City,* 12 Cal.4th 854, 50 Cal.Rptr.2d 242, 911 P.2d 429 (1996) (*Ehrlich*) for the proposition that an unconstitutional taking occurs when a building permit is conditioned on payment of an excessive fee without an individualized determination

of "rough proportionality" between the fee and the impact of the applicant's proposed development. While *Nollan* and *Dolan* plainly apply to required dedications of possessory interests in real property, plaintiffs urge us to adopt the reasoning of *Ehrlich* by holding that a payment of money is subject to the same constitutional scrutiny.

In *Nollan,* the owners of coastal property in California sought to build a larger residence on their land. Their building permit was conditioned upon the granting of an easement parallel to the shoreline for the ostensible purpose of improving access to nearby public beaches. The U.S. Supreme Court, noting that the stated purpose bore no relation to the dedication demanded, held that such a condition amounted to nothing more than governmental extortion by leveraging the state's land-use regulation authority to demand concessions from landowners for which it would otherwise have to pay just compensation under the Fifth Amendment.

In *Dolan,* a city conditioned the building permit for the expansion of a retail store on the owner dedicating that portion of the property adjacent to a river, both to prevent development within the river's flood plain and so the city could provide a bicycle and pedestrian path to reduce traffic congestion. The Supreme Court held that, where there is some rational connection between the governmental interest to be served and the landowner's proposed development, the Fifth Amendment requires only that there be an individualized determination of "rough proportionality," not mathematical equality, between the dedication demanded and the impact of the landowner's proposed development.

Plaintiffs' reliance on *Nollan* and *Dolan* is misplaced, even if we should choose to adopt the reasoning of the California Supreme Court in *Ehrlich.* The record before us reveals that the District has no statutory or regulatory authority to deny or condition the issuance of building permits. While the record does reflect that the local governmental entities with authority to deny or condition building permits do route the applications to the District for its "sign-off," those entities maintain the ultimate authority to grant or

deny the applications, and thus, there can be no risk of leveraging by the District. Nor is there anything in the record to support a conclusion that the District has the power, officially or unofficially, *de facto* or *de jure*, to prevent the issuance of a building permit. The plaintiffs, in opposing summary judgment, offered no evidence to the contrary.

Moreover, the essence of a *Nollan/Dolan* violation is the demanding by the governmental authority of a concession, especially a dedication of an interest in real property, for its own benefit and not to offset the impact of the proposed development. Here, however, the PIF is a charge for connecting to and using the District's sewer facilities, a service primarily of benefit to plaintiffs and obviously directly related to plaintiffs' development.

The trial court therefore properly held that no unconstitutional taking of plaintiffs' property occurred in violation of the Fifth Amendment.

### II.

■ Plaintiffs next contend that the trial court erred by finding that the Board did not abuse its discretion or exceed its jurisdiction in affirming the PIF determination. We disagree.

When reviewing the decision of a governmental body or officer pursuant to C.R.C.P. 106(a)(4), the district court must affirm the decision unless the governmental entity has abused its discretion or exceeded its jurisdiction. The trial court's review is based solely on the record that was before the governmental entity, and the decision must be affirmed unless there is no competent evidence in the record to support it such that the decision was essentially arbitrary or capricious. C.R.C.P. 106(a)(4); *Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304 (Colo. 1986).

We apply the same standard of review as the district court to the decision of the governmental entity. *Denargo Market Neighbors Coalition v. Visser Real Estate Investments*, 956 P.2d 630 (Colo.App.1997).

Here, plaintiffs assert that the Board abused its discretion because there was no competent evidence in the record to support its decision. However, much of plaintiffs' argument is based on their contention that an individualized determination of "rough proportionality" was required by *Nollan* and *Dolan*, a contention we have rejected.

The remainder of the plaintiffs' argument is nothing more than an attack on the credibility and reliability of the evidence that is in the record. Since the board was in a better position to determine the weight and credibility of the evidence presented, we decline to substitute our judgment for that of the board. *Van Sickle v. Boyes*, 797 P.2d 1267 (Colo.1990).

Our review of the record reveals sufficient evidence to support the board's decision that the PIF calculation, as set forth in defendant's rules and regulations, is not arbitrary or capricious. Evidence in the record established that the PIF and the District's other fees were based originally in part on local demographic data showing that single-family homes and duplex units were predominantly owner-occupied while units in triplex and larger multi-family buildings were predominantly second homes or occupied by short-term renters. Other evidence established that second homes and short-term rental use result in higher peak occupancy and thus higher peak sewage flow.

The board, in considering plaintiffs' appeal, also examined newer demographic data supporting a conclusion that second home and rental use of duplex units had substantially increased and, if any change was warranted, that duplex units should be charged the higher rate applicable to triplexes. Additional evidence showed that the current PIF and fee-setting methodology apportions the District's costs adequately, although not precisely, in accordance with peak sewage flow rates.

Thus, because there is evidence in the record to support its decision, we conclude that the board did not exceed its jurisdiction, nor did it abuse its discretion, in setting or affirming the PIF.

### III.

■ Plaintiffs next contend that the statute authorizing special districts to set their

own fees for services, § 32–1–1001(1)(j), C.R.S.1998, is an unconstitutional delegation of legislative authority to the District and other special districts. We disagree.

■ The party challenging the constitutionality of a statute must prove that the statute is unconstitutional beyond a reasonable doubt. When a statute is subject to different interpretations, we must adopt a construction that comports with constitutional norms. *People v. Holmes,* 959 P.2d 406 (Colo.1998).

■ The power to set public utility rates is a legislative governmental function that may properly be delegated to a special district by · the General Assembly. *Bennett Bear Creek Farm Water & Sanitation District v. City & County of Denver,* 928 P.2d 1254 (Colo.1996); *see* E. McQuillin, *Law of Municipal Corporations* §§ 4.13 and 34.147 (3d ed.1995).

■ When the General Assembly delegates some part of its authority to an administrative agency, there must be "sufficient statutory standards and safeguards and administrative standards and safeguards, in combination, to protect against unnecessary and uncontrolled exercise of discretionary power." *Cottrell v. City & County of Denver,* 636 P.2d 703, 709 (Colo.1981). This standard is applicable to some legislative and quasi-legislative delegations to local governmental entities. *Beaver Meadows v. Board of County Commissioners,* 709 P.2d 928 (Colo.1985).

■ Pursuant to the nondelegation doctrine, the General Assembly may not delegate its law-making power although it may delegate rule-making and other limited legislative authority to persons or entities within a proper statutory framework and with appropriate safeguards. The "nondelegation doctrine is not merely concerned with the proper distribution of powers among the departments of government, but also looks to the protection of the public from the imposition of irrational rules created by non-elected officials." *People v. Lowrie,* 761 P.2d 778, 781 (Colo.1988).

Section 32–1–1001(1), C.R.S.1998, states in pertinent part:

For and on behalf of the special district the board has the following powers:

. . . .

(j) To fix and from time to time to increase or decrease fees, rates, tolls, penalties, or charges for services, programs, or facilities furnished by the special district. . . .

While plaintiffs would have us interpret § 32–1–1001(1)(j), C.R.S.1998, standing alone, we must instead look to the entire statutory scheme, as well as the rules and regulations of the special district, to ascertain whether there are sufficient standards and safeguards. *Cottrell v. City & County of Denver, supra.*

We construe the language of § 32–1–1001(1)(j), authorizing special districts to charge "fees … for services … furnished by the special district," as implicitly requiring that those fees be reasonable in light of the services actually furnished by the special district. A contrary interpretation would permit a special district to charge excessive fees, or fees for improper purposes, that might violate due process or other constitutional norms, and we are required to avoid such a construction when a constitutional alternative is available. *See People v. Holmes, supra.*

In support of that conclusion, we note that the members of a special district board must be elected by the registered voters who either live in the district or who own real property there. Sections 32–1–801 to 32–1–807 and 32–1–103(5), C.R.S.1998. In addition, the members of a special district board are subject to recall by a petition and election procedure. Section 32–1–906(1), C.R.S. 1998.

All meetings of a special district board must be open to the public and must be held within the district boundaries or in close proximity to the district, and notice of the time and place of such meetings must be posted in advance. No action may be taken by a special district except by majority vote of a quorum of the board members. Section 32–1–903, C.R.S.1998.

Consequently, the members of a special district board are not "insulated from the

constraining force of the democratic process" as would be the appointed members of an administrative agency. *Cottrell v. City & County of Denver, supra,* 636 P.2d at 709.

In addition, the fees charged by the District are set in its rules and regulations. Consequently, pursuant to those rules and regulations, as well as the Special Districts Act, the fees may be established and altered only by adoption or amendment of the rules and regulations, which requires a majority vote of a quorum of the members of the board at a meeting open to the public. *See* § 32–1–903, C.R.S.1998. The District's rules and regulations also require the preparation of an annual itemized budget and the preparation of an annual audit, each open to the inspection of the public.

We conclude that the statutory scheme, in conjunction with the District's rules and regulations, is sufficient to prevent unnecessary and uncontrolled exercise of discretionary power by the Board. Accordingly, we hold that the statute authorizing special districts to set their own fees for services, § 32–1–1001(1)(j), C.R.S.1998, is not an unconstitutional delegation of legislative authority.

## IV.

Plaintiffs next contend that the classifications used by the District in determining the PIF violates their right to equal protection of the law. Again, we disagree.

Because rate setting is inherently a legislative governmental function, involving many questions of judgment and discretion, the separation of powers doctrine requires that the courts give substantial deference to the decisions of the rate-setting authority. Accordingly, we will not set aside the rates or methodology employed by such a legislative entity unless "inherently unsound," and equal protection requires no more. *Bennett Bear Creek Farm Water & Sanitation District v. City & County of Denver, supra.*

Equal protection does not require that there be absolute equality of service fees among those similarly situated. *Fort Collins Motor Homes, Inc. v. City of Fort Collins,* 30 Colo.App. 445, 496 P.2d 1074 (1972). Instead, all that is required is a rational basis for the fee schedule as applied. *Bennett Bear Creek Farm Water & Sanitation District v. City & County of Denver, supra.*

Contrary to plaintiffs' contention, there is sufficient evidence in the record before us to support the trial court's finding that the board's PIF determination, based on classification of buildings by nature, use, and size, is not arbitrary or capricious and, while perhaps not optimal, it is not irrational or inherently unsound. Hence, plaintiffs' equal protection rights were not violated.

## V.

Plaintiffs finally contend that the trial court abused its discretion by denying their motion to amend their complaint to include claims that defendant violated their procedural due process rights and for civil rights violations pursuant to 42 U.S.C. § 1983. We disagree.

C.R.C.P. 15 provides that the trial court should freely permit a party to amend its pleadings when justice requires. However, the trial court's decision to grant or deny a motion to amend is entrusted to its sound discretion, and, on appeal, we will not disturb that decision absent an abuse of discretion. *Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424 (Colo.App.1985).

A trial court may properly deny leave to amend a complaint late in litigation if the proponent fails to show that the delay is justified. *Union Insurance Co. v. Kjeldgaard,* 820 P.2d 1183 (Colo.App.1991).

Here, citing *Board of County Commissioners v. Sundheim,* 926 P.2d 545 (Colo. 1996) and C.R.C.P. 106(b), the trial court held, in effect, that a complaint brought pursuant to C.R.C.P. 106(a)(4) cannot be amended more than 30 days after the decision of the governmental entity that it seeks to have reviewed. However, C.R.C.P. 106(b) and *Sundheim* require only that the complaint be filed within 30 days, and neither addresses the issue of later amending the complaint to include additional claims.

C.R.C.P. 106(b) does expressly authorize amendments "at any time with leave of the

court, for good cause shown, to add, dismiss or substitute parties." Because there is no provision in C.R.C.P. 106 to the contrary, we conclude that including a claim for relief pursuant to C.R.C.P. 106(a)(4) does not prevent the complaint from being amended as to other claims. Moreover, *Sundheim* specifically states that a .claim pursuant to 42 U.S.C. § 1983 may be brought at any time and is not subject to the 30–day filing deadline of C.R.C.P. 106(b). Thus, it was error for the trial court to deny leave to amend the complaint on this basis.

Nevertheless, the trial court also denied the motion to amend because it was untimely. Plaintiffs asserted in their motion, and continue to assert here, that they could not have sought to amend their complaint any earlier because of the court's case management order staying the proceedings on their constitutional claims pending resolution of the C.R.C.P. 106(a)(4) claim. The record reveals that the motion to amend was filed approximately seven weeks after the entry of the order resolving the C.R.C.P. 106(a)(4) claim.

The case management order states, in pertinent part:

> Plaintiffs' claims under C.R.C.P. 106(a)(4) will be resolved first, utilizing the procedures provided for under Rule 106. Plaintiffs' remaining constitutional claims will be stayed pending resolution of the Rule 106 claims. Plaintiffs' remaining claims will proceed in accordance with the Colorado Rules of Civil Procedure following a decision on the Rule 106 claims.

It is not entirely clear from the language of the order whether a motion to amend the complaint would have violated the case management order if it had been filed prior to the resolution of the C.R.C.P. 106(a)(4) claim. In its order denying leave to amend the complaint, the trial court stated only that:

> [C.R.C.P. 15(a)] does not permit a party to add claims late in litigation without a threshold showing of some reason for the delay.... Plaintiffs have offered no reason for the delay, and have admitted that the information on which the proposed new

claims is [sic] based was provided over nine months ago.

In any event, however, we conclude that the trial court did not abuse its discretion by ruling that plaintiffs offered no reason for their substantial delay after the resolution of their C.R.C.P. 106(a)(4) claim. Since the information giving rise to the claims they wished to add was admittedly provided to them more than nine months earlier, amendment could have been accomplished within the available time frame. *See Zertuche v. Montgomery Ward & Co., supra.*

The judgment and order denying leave to amend the complaint are affirmed.

Judge CRISWELL and Judge KAPELKE concur.