COLORADO COURT OF APPEALS                                   **2017COA55**

Court of Appeals No. 16CA0598
Arapahoe County District Court No. 12CV1559
Honorable Elizabeth A. Weishaupl, Judge

William P. Dolan,

Plaintiff-Appellant,

v.

Fire and Police Pension Association,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE GRAHAM
Taubman and Navarro, JJ., concur

Announced April 20, 2017

Brosseau Bartlett Seserman, LLC, David B. Seserman, Michael Y. Ley,
Greenwood Village, Colorado, for Plaintiff-Appellant

Hoffman Parker Wilson & Carberry, P.C., M. Patrick Wilson, Denver, Colorado,
for Defendant-Appellee

¶ 1    In this suit over firefighter occupational disability benefits, we are asked to determine whether full-time employment as a fire chief precludes a firefighter from collecting occupational disability benefits because the position of fire chief directly involves "the provision of . . . fire protection" under the Policemen's and Firemen's Pension Reform Act (the Act), sections 31-31-101 to -1203, C.R.S. 2016. We conclude that it does and, therefore, affirm.

## I.    Background

¶ 2    Plaintiff, William P. Dolan, appeals the district court's judgment upholding the discontinuation of his occupational disability benefits by the Fire and Police Pension Association (FPPA), as affirmed by its Board of Directors (Board).

¶ 3    Dolan is a career firefighter. He joined North Metro Fire Rescue in 1986, and in 2007, he sustained a right elbow injury that prevented him from passing the physical tests for firefighting duties. After approximately two years of attempted rehabilitation, North Metro terminated Dolan. He promptly filed for occupational disability benefits with the FPPA.

¶ 4    While working for North Metro, Dolan also worked for the Elk Creek Fire Protection District in both paid and unpaid capacities.

From 1998 to 2003, Dolan was the paid fire chief of Elk Creek. He returned to volunteer service at Elk Creek during 2008, while rehabilitating his elbow. In May 2010, Elk Creek again hired Dolan as its paid fire chief.

¶ 5    In July 2010, Dolan appeared at a hearing to determine whether he was entitled to occupational disability benefits. In pertinent part, Dolan testified he was the "administrative chief" for Elk Creek. The hearing officer determined Dolan was eligible for permanent occupational disability benefits based on his injury. The Death and Disability Review Committee of the FPPA adopted the hearing officer's findings and awarded Dolan permanent occupational disability benefits pending "a certification from the [Elk Creek] Board [of Directors] that this position at Elk Creek Fire is strictly administrative in nature and that your job duties are *not* directly involved with the provisions of fire protection."

¶ 6    The Elk Creek Board sent a copy of its contract with Dolan to the FPPA. While the Elk Creek Board informed the FPPA that Dolan was "Administrative Fire Chief" and was "hired to manage the finances and the department and does not respond as part of our fire protection activities," the contract signed by Dolan assigned him

the title of "Fire Chief" and required that he "carry[] out all statutory duties imposed upon the Fire Chief by the Special District Act or any other Federal, State or local law or ordinance." The contract also stated "[t]he Fire Chief is not required to perform firefighting or emergency medical duties, but shall, at his discretion, act in a command position at emergency incidents as needed and as determined by the Fire Chief."

¶ 7    After reviewing the contract, the FPPA met with Dolan. The FPPA was concerned that the terms of the contract required Dolan to execute "duties . . . directly involved with the provision of . . . fire protection" under section 31-31-806, C.R.S. 2016, making him ineligible for disability benefits. While the substance of that meeting is a matter of dispute, it is undisputed that following that meeting Dolan immediately resigned from his position at Elk Creek.

¶ 8    The FPPA then began paying Dolan disability benefits, including back pay to his last day on payroll at North Metro.

¶ 9    In early 2011, an Elk Creek Board member reached out to the FPPA regarding Dolan's appearance at fire and emergency scenes. Based on this information, the FPPA subpoenaed Elk Creek's records pertaining to Dolan. Elk Creek produced National Fire

Incident Reporting System (NFIRS) reports showing Dolan had responded to 72 incidents in 2010 and had participated in another 170 incidents.

¶ 10 The FPPA issued a notice of determination suspending Dolan's disability benefits in May 2011. Because the FPPA accused Dolan of fraudulently obtaining his benefits, it held a hearing. The hearing officer ultimately determined that Dolan had not fraudulently obtained benefits, but because his position at Elk Creek had involved fire protection, he was ineligible for benefits under section 31-31-806 of the Act. The officer recommended Dolan repay the benefits he received after May 10, 2010, the date he signed his employment contract with Elk Creek.

¶ 11 The Board met in July 2012 and affirmed the hearing officer's recommendation. Dolan filed for C.R.C.P. 106 review of the Board's decision in district court. He also asserted several common law claims against the FPPA.

¶ 12 The district court affirmed the decision of the Board. Dolan then filed a motion to amend his complaint, which the court denied as untimely. A trial to the court was held on Dolan's remaining

common law claims. The court found for the FPPA and entered final judgment against Dolan in February 2016.

¶ 13 On appeal, Dolan presents two arguments. First, he argues the Board and the district court misapplied the law in discontinuing his disability benefits because, since his termination from North Metro, he has never been re-employed in a position directly involved with the provision of fire protection under section 31-31-806. Second, he contends the district court erred in denying his motion to amend his complaint when it determined his claim was untimely. We address and reject each contention in turn.

## II. Occupational Disability Benefits and Disqualification on Re-employment

### A. Principles of Statutory Interpretation

¶ 14 The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *Lewis v. Taylor*, 2016 CO 48, ¶ 20. To do so, we look to the plain meaning of the statutory language and consider it within the context of the statute as a whole. *Id.* "[I]f the statutory language has more than one reasonable meaning, and is therefore ambiguous, we may look to interpretive aids to construction to resolve the ambiguity and

determine which of the reasonable interpretations is appropriate." *Id.* Tools of statutory interpretation "include legislative history and how the law has been construed in similar circumstances." *Id.* at ¶ 27.

¶ 15     Courts traditionally defer to an agency's interpretation of a statute it is entrusted to administer, *Red Flower, Inc. v. McKown*, 2016 COA 160, ¶ 19, provided the interpretation has a reasonable basis in law and is supported by the record, *Marshall v. Civil Serv. Comm'n*, 2016 COA 156, ¶ 9.

### B.     Standard of Review

¶ 16     We review questions of statutory interpretation de novo. *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 24.

¶ 17     Under C.R.C.P. 106(a)(4)(I), judicial review is strictly "limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." "A governmental body abuses its discretion if its decision is not reasonably supported by any competent evidence in the record or if the governmental body has misconstrued or misapplied applicable law." *Friends of the Black Forest Pres. Plan, Inc. v. Bd. of Cty. Comm'rs*, 2016 COA 54,

¶ 12; *see Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1309 (Colo. 1986) ("'No competent evidence' means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority.").

¶ 18     We review whether an administrative body misconstrued or misapplied the law de novo. *Friends of Black Forest,* ¶ 15.

### C.     The Act

¶ 19     The Act ensures proper funding for police and firefighter pensions.  § 31-31-101.  It also guarantees that members will receive certain retirement plans.  *See* § 31-31-102(4), C.R.S. 2016 (defining member); § 31-31-301, C.R.S. 2016 (creation of fire and police members' benefit fund).

¶ 20     Under Part 8, "Disability and Survivor Benefits," the General Assembly created a comprehensive benefits system for police and firefighters injured or killed while working.  *See generally* §§ 31-31-801 to -815, C.R.S. 2016.  Section 31-31-803, C.R.S. 2016, designates three types of disabilities warranting benefits: "total disability," "permanent occupational disability," and "temporary occupational disability."  *See* § 31-31-801 (defining

those terms).  The Board determines whether a member is disabled.
§ 31-31-803(4)(a)(I); *see* § 31-31-202(2)(a), C.R.S. 2016 ("The board
has the sole power to determine eligibility for retirement for
disability, whether total or occupational . . . .").  "The board shall
not make a determination of disability unless two of the three
physicians examining the applicant agree that a disability exists,
but the board shall not be bound by the physicians' determination
that a disability exists."  § 31-31-803(4)(a)(I).

¶ 21    If the Board determines a member is disabled and eligible for
benefits, the member will receive benefits unless there is a change
in disability status or the member is re-employed.  § 31-31-805,
C.R.S. 2016 (change in disability status); § 31-31-806 (re-
employment).

¶ 22    Under section 31-31-806:

> If, subsequent to disability benefits being
> awarded to a member . . . a member is
> employed or reemployed in this state or any
> other jurisdiction . . . in a full-timed salaried
> position that normally involves working at
> least one thousand six hundred hours in any
> given calendar year and *the duties of which are
> directly involved with the provision of . . . fire
> protection as determined by the board*, the
> benefits provided pursuant to section 31-31-
> 803 shall be discontinued.

8

(Emphasis added.)

### 1. Was Dolan Directly Involved with the Provision of Fire Protection While Employed as Elk Creek Fire Chief?

¶ 23    Dolan contends that his position as Elk Creek fire chief did not "directly involve[] . . . the provision of . . . fire protection" requiring the FPPA to discontinue his disability benefits.  He relies on *Kilbourn v. Fire & Police Pension Ass'n*, 971 P.2d 284 (Colo. App. 1998), and *Agee v. Trustees of the Pension Board of the Cunningham Fire Protection District*, 33 Colo. App. 268, 518 P.2d 310 (1974), to support his contention that the Board must find that a firefighter has undertaken "physical involvement with firefighting" to conclude he or she is directly involved with the provision of fire protection. We are not persuaded.

¶ 24    The Act defines the term "member" as "an active employee who is a full-time salaried employee of a . . . fire protection district . . . and whose duties are directly involved with the provision of . . . fire protection." § 31-31-102(4).  The Act does not define the phrase "directly involved with the provision of . . . fire protection." *See* § 31-31-102 (definitions); § 31-31-801 (same).  However, that phrase appears in several other sections of the Act.  *See* § 31-31-

704, C.R.S. 2016 (allowing employers who cover members directly involved with the provision of such services under Social Security to affiliate with the FPPA); § 31-31-704.5, C.R.S. 2016 (same as section 31-31-704 except with respect to a social security supplemental plan as described in section 31-31-704.6, C.R.S. 2016); § 31-31-708, C.R.S. 2016 (same as sections 31-31-704 and 31-31-704.5 except it allows affiliation by county sheriffs). In each occurrence, the member's duties in directly providing fire protection services must be "certified."

¶ 25 Section 31-31-806 warns that a member is disqualified from receiving disability benefits when he or she is re-employed in a full-time salaried position, "the duties of which are directly involved with the provision of . . . fire protection *as determined by the board.*" (Emphasis added.) The Act clearly requires that in each instance where a member is purportedly directly involved with providing fire protection services, whether he or she is directly involved with providing those services is a fact that must be certified or determined by the Board. In other words, it is a question reserved to third-party evaluation.

¶ 26    Here, the Board adopted the hearing officer's conclusions of fact and law that Dolan's duties as Elk Creek fire chief directly involved fire protection. The employment contract between Dolan and Elk Creek required him to "be responsible for . . . directing the operation and maintenance of all aspects of the Emergency Services provided by the District; [and] carrying out all statutory duties imposed upon the Fire Chief by the Special District Act or any other Federal, State or local law or ordinance." It also stated he "is not required to perform firefighting or emergency medical duties, but shall, at his discretion, act in a command position at emergency incidents as needed and as determined by [him]." Because Dolan acted in a command capacity at the scenes of fires and accidents, the hearing officer concluded it was not necessary to find that he was involved in "hands on" firefighting or medical care to conclude that his position was directly involved with the provision of fire protection. We conclude this interpretation is reasonable.

¶ 27    Nothing in the Act suggests the phrase "directly involved with the provision of . . . fire protection" is restricted to physically fighting fires, as Dolan advocates. In fact, the General Assembly has excluded firefighters who can physically fight fires from

11

disability benefits. § 31-31-805 (change in disability status). Were we to accept Dolan's interpretation of section 31-31-806, section 31-31-805 would be duplicative. We avoid construing a statute in a way that would render any of its words superfluous. *Sooper Credit Union v. Sholar Grp. Architects, P.C.*, 113 P.3d 768, 771 (Colo. 2005).[1]

¶ 28     Dolan's reliance on *Kilbourn* and *Agee* is misplaced. *Kilbourn* addressed the retroactivity of section 31-31-806. 971 P.2d at 286-87. Section 31-31-806 was added to the Act after the plaintiff (a police officer) was awarded an occupational disability pension. *Id.* at 286. The *Kilbourn* division concluded that section 31-31-806

---

[1] We also note that Dolan's position as fire chief was full-time and that it entitled him to enroll in the FPPA's death and disability benefits plan. A review of the legislative history of section 31-31-806, C.R.S. 2016, reveals that the pertinent language was added to the statute in 1993. Prior to that time, the statute disqualified a member from disability benefits when that member was re-employed "in a position which qualifies the person as a member." § 31-30-1007(3.5), C.R.S. 1992. Thus, it appears to us that the General Assembly intended to exclude a member from receiving disability benefits when that member was re-employed in a position that qualified him or her for death and disability benefits under the Act. Here, the record establishes that the person employed in the fire chief position Dolan accepted was eligible for death and disability benefits and that either Dolan or Elk Creek, or both, intentionally did not enroll Dolan in that program.

was retroactive and, therefore, applied to the plaintiff who had returned to work as a deputy sheriff — the essential nature of that job "involv[ing] the provision of police protection." *Id.* at 287. Nothing in *Kilbourn* suggests, as Dolan argues, that the goal of section 31-31-806 is to determine whether a member is able to "be restored to active service." Indeed, that language comes directly from section 31-31-805(2)(a) and is not applicable to section 31-31-806.

¶ 29    Nor is *Agee* helpful to Dolan's position. *Agee* interprets the term "active service" as it was used in a prior version of the Act. 33 Colo. App. at 271, 518 P.2d at 303. The division concluded that membership on the board of directors of a fire protection district did not constitute "active service" entitling the directors to a pension. *Id.* at 272, 518 P.2d at 304. The division held that the official duties of the board were solely administrative and that the pension's "active service" requirement "appl[ied] only to those actively involved in firefighting." *Id.* at 271, 518 P.2d at 303. *Agee* does not address whether the duties of a fire chief are considered duties directly involved with the provision of fire protection. However, the opinion does support an argument that "attend[ing] a

13

fire []or participat[ing] in training sessions" constitutes active service. *Id.* at 272, 518 P.2d at 303. The duties Dolan undertook as Elk Creek fire chief included both attending fires and participating in training sessions. As a result, in our view, any conclusion to be drawn from *Agee* does not support Dolan.

¶ 30    Because nothing in the Act suggests that re-employment at a position "directly involved with the provision of . . . fire protection" must be limited to "physically fighting fires," we conclude the district court and the Board did not misapply the law in determining Dolan was no longer eligible for disability benefits after re-employment at Elk Creek.

### 2. Did the Board Rely Upon Competent Evidence to Determine Dolan Was Directly Involved With the Provision of Fire Protection?

¶ 31    In a related argument, Dolan contends that the Board did not consider competent evidence in determining his position as fire chief directly involved the provision of fire protection. We reject this contention.

¶ 32    We note that "[e]valuating witness credibility and the probative value and weight of the evidence are solely within the fact-finding province of the agency." *Colo. Dep't of Revenue v. Astro Imports,*

*Inc.*, 2016 COA 25, ¶ 8.  Thus, Dolan's argument that the NFIRS reports are incompetent evidence because they are inaccurate presents a question of probative value and weight left to the discretion of the Board.

¶ 33    Dolan argues that the FPPA did not present any witness who had first-hand knowledge of what actions he took at fire and emergency scenes.  However, Dolan introduced nine witnesses who testified they had been with Dolan at emergency scenes, and several testified that Dolan acted in command at those scenes.  And Dolan's employment contract with Elk Creek established his duties as fire chief and included the ability, at his discretion, to take command of emergency incidents.

¶ 34    We conclude sufficient record evidence exists to support the Board's determination that Dolan's employment as Elk Creek fire chief was employment "the duties of which are directly involved with the provision of . . . fire protection."  And because competent evidence supports the Board's decision, we are compelled to affirm it.  C.R.C.P. 106(a)(4); *Ross*, 713 P.2d at 1309.

### III. Motion to Amend Complaint

¶ 35    Dolan asserts the district court erred in denying his motion to amend his complaint to add a 42 U.S.C. § 1983 (2012) claim for violation of his right to procedural due process.  We disagree.

¶ 36    Dolan sought leave to amend his complaint on August 30, 2013, approximately one year after he filed his initial complaint, seven months after the district court initially found in favor of the FPPA, and four months after the district court finalized its C.R.C.P. 106 order.  Dolan argued the amendment was appropriate because no substantial discovery had taken place and no trial date had been set.  In the proposed amended complaint, Dolan alleged a "violation of [his] procedural due process rights" based on the FPPA's failure to give him "any opportunity to respond or raise affirmative defenses to the [Chief Benefit Officer's] Notice of Determination prior to the close of evidence at the administrative hearing."  Thus, Dolan contended "the FPPA Rules deprived [him] of a meaningful hearing regarding the termination of his disability benefits in violation of the Fourteenth Amendment to the United States Constitution and Article II, Section 25 of the Constitution of the State of Colorado."

¶ 37    The district court denied Dolan's request, concluding:

> The Court does *not* hold that [Dolan] may not
> have a viable due process claim regarding the
> Rules governing the FPPA's hearing process
> and/or the Board's discretion in exercising
> those Rules, but *does* hold that any such claim
> should have been raised in a timely manner
> under Rule 106[a](4). The Court provided
> [Dolan] with ample opportunity to raise and
> address all issues regarding the process
> provided to [him] during the hearings on his
> disability claim before the Board, and only
> now, almost four (4) months after the Court's
> final Order regarding these Rules 106 issues,
> does [Dolan] raise this claim for the first time.
>
> Based on this analysis, the Court DENIES
> [Dolan's] Motion to add his Sixth Claim for
> Relief regarding due process deficiencies
> during the FPPA Board hearings as untimely.

¶ 38    "Under well-established law, leave to amend is a discretionary matter which is left to the trial court to determine." *Polk v. Denver Dist. Court*, 849 P.2d 23, 25 (Colo. 1993). Thus, we will only reverse a court's decision to deny a motion to amend for an abuse of that discretion. *Id.* Under C.R.C.P. 15, "[a] trial court may properly deny leave to amend a complaint late in litigation if the proponent fails to show that the delay is justified." *Krupp v. Breckenridge Sanitation Dist.*, 1 P.3d 178, 184 (Colo. App. 1999), *aff'd*, 19 P.3d 687 (Colo. 2001).

17

¶ 39     A facial challenge to the constitutionality of a regulation is a matter for declaratory judgment and is subject to review under C.R.C.P. 57. *Tri-State Generation & Transmission Co. v. City of Thornton*, 647 P.2d 670, 676 n.7 (Colo. 1982); *accord Kruse v. Town of Castle Rock*, 192 P.3d 591, 598 (Colo. App. 2008).

¶ 40     An as-applied challenge to the constitutionality of a regulation is cognizable under C.R.C.P. 106(a)(4) and must be brought within the time limits of C.R.C.P. 106(b). *Tri-State*, 647 P.2d at 676 n.7; *see Danielson v. Zoning Bd. of Adjustment*, 807 P.2d 541, 543 (Colo. 1990).

¶ 41     "It is generally presumed that administrative rules and regulations comport with constitutional standards and the burden is upon the party attacking such provisions to establish their invalidity beyond a reasonable doubt." *Sears v. Romer*, 928 P.2d 745, 751 (Colo. App. 1996).

¶ 42     On appeal, Dolan argues his amended complaint presented a facial challenge to the FPPA regulations. However, his complaint and attached motion do not clearly express a facial challenge. Dolan sought "an order determining the FPPA violated [his] procedural due process rights," and his complaint and motion

18

repeatedly refer to actions taken by the FPPA against him. "A constitutional challenge to an ordinance as applied is concerned with the application of a general rule or policy 'to specific individuals, interests, or situations' and is generally a quasi-judicial act subject only to C.R.C.P. 106(a)(4) review." *Tri-State*, 647 P.2d at 676 n.7 (quoting *Snyder v. City of Lakewood*, 189 Colo. 421, 427, 542 P.2d 371, 376 (1975)). Because Dolan presented the district court with an as-applied challenge to the FPPA regulations, the court correctly determined that claim was time barred by C.R.C.P. 106(b).

¶ 43 Even if we were to accept Dolan's position that his claim presented a facial challenge to the FPPA regulations, the court's denial of his claim was not error because Dolan failed to show that his delay in bringing the claim was justified. As noted by the court, Dolan had ample opportunity to raise this claim during earlier proceedings, and he presented the argument for the first time months after the court denied his request for relief from the Board's determination. Dolan offers no reason for his substantial delay in amending the complaint since the information giving rise to his claim was evident to him prior to the Board issuing its final

decision. *See Krupp*, 1 P.3d at 185. Accordingly, we conclude the district court did not abuse its discretion in denying Dolan's request as untimely.

## IV. Conclusion

¶ 44    The judgment is affirmed.

JUDGE TAUBMAN and JUDGE NAVARRO concur.